STEPHEN L. COHEN
Email: cohens@sec.gov
STACEY M. NAHRWOLD
Email: nahrwolds@sec.gov

Attorneys for Plaintiff:
Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549-4030
Telephone: (202) 551-4472
Facsimile: (202) 772-9245

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

_____

| | | |
|---|---|---|
| | : | |
| **SECURITIES AND EXCHANGE** | : | |
| **COMMISSION,** | : | |
| | : | |
| **Plaintiff,** | : | **Case No. 2:08-CV-457** |
| | : | |
| **v.** | : | |
| | : | |
| **COMPASS CAPITAL GROUP, INC.,** | : | |
| **MARK A. LEFKOWITZ,** | : | |
| **ALVIN L. DAHL,** | : | |
| **JOHN R. DUMBLE,** | : | |
| **JOHN C. HOPF,** | : | |
| **KEVIN D. ROMNEY, and** | : | |
| **SHANE H. TRAVELLER,** | : | |
| | : | |
| **Defendants.** | : | |

_____:

## <u>COMPLAINT</u>

Plaintiff Securities and Exchange Commission ("Commission"), for its Complaint

against defendants Compass Capital Group, Inc. ("Compass Capital"), Mark A.

Lefkowitz ("Lefkowitz"), Alvin L. Dahl ("Dahl"), John R. Dumble ("Dumble"), John C.

Hopf ("Hopf"), Kevin D. Romney ("Romney") and Shane H. Traveller ("Traveller")

(collectively the "Defendants"), alleges as follows:

## SUMMARY OF THE ACTION

1.      This matter involves an illicit, unregistered public offering of the securities of 21st Century Technologies, Inc. ("21st Century"), a former Business Development Company ("BDC").  Between August 2003 and August 2004, Defendants Romney (21st Century's former General Manager and chief executive officer), Hopf (a 21st Century Board member), Lefkowitz and Compass Capital employed a scheme to evade the registration requirements of the federal securities laws for a public offering by 21st Century.  Under the guise of a registration exemption, these defendants structured the offering in a manner that generated excess and unlawful proceeds.  In the course of this scheme, these defendants fraudulently deprived the public of material information about Compass Capital's and others' roles as underwriters and how the underwriters were compensated for distributing 21st Century's securities.  In addition, 21st Century published materially false and misleading statements and omissions in Commission filings, including annual and periodic reports, numerous filings in 2003 and 2004 related to its unregistered offerings, a report on Form 8-K, and press releases between August 2003 and February 2005.  During this time period, Defendants Dahl (21st Century's former chief financial officer), Dumble (a 21st Century Board member and CEO), and Traveller (a 21st Century Board member) aided and abetted 21st Century's publication of materially false and misleading statements in periodic reports filed with the Commission, and Defendants Romney and Traveller were responsible for some of the statements in filings related to the unregistered offerings.

2.      Starting in August 2003, 21st Century sought to take advantage of an exemption from registration contained in Regulation E of the Securities Act of 1933,

which permits a BDC to issue securities exempt from registration subject to specific Commission rules.  One such rule limits to $5 million the amount that a qualifying BDC is allowed to raise in a public offering within one year without filing a registration statement.  However, 21st Century and Defendants Compass Capital, Lefkowitz, Hopf, and Romney structured the offering to evade Regulation E's limits.  Pursuant to a secret agreement, 21st Century sold stock to Compass Capital and its affiliates at a discount to market prices, and Compass Capital and its affiliates quickly resold that stock to public investors without disclosing these transactions.  Because Compass Capital and its Affiliated Investors bought the shares from 21st Century with a view to distributing them in a public offering, defendants Compass Capital, Lefkowitz and Hopf acted as undisclosed underwriters for 21st Century's public offering.  Thus, in their unregistered offers and sales of securities to the public, these defendants profited by obtaining the shares from the company at a hidden discount.  As a result, 21st Century raised more than $5 million in its 2003 public offering, failed to comply with the requirements of Regulation E, and violated the Securities Act's registration requirements.

3.      During the same period, Defendants Romney, Dumble, and Traveller were also responsible for the publication of materially false and misleading statements in 21st Century's periodic filings, and Dahl, Dumble, and Traveller aided and abetted 21st Century's reporting, record-keeping and internal controls violations of the Securities Exchange Act of 1934.

4.      Defendants' conduct described herein violates the federal securities laws. Unless enjoined, these Defendants are likely to commit similar violations in the future. Accordingly, the Commission seeks an order enjoining Defendants; requiring

disgorgement of ill-gotten gains and unjust enrichment by defendants Compass Capital, Lefkowitz, Hopf and Traveller; civil monetary penalties from all Defendants; officer and director bars against Dumble, Romney, and Traveller; and penny stock bars against Lefkowitz, Dumble, Romney, Traveller, Dahl, and Hopf.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction pursuant to Sections 20 and 22 of the Securities Act of 1933 (the "Securities Act") [15 U.S.C. §§ 77t and 77v] and Sections 21 and Section 27 of the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. §§ 78u and 78aa].

6.      In connection with the transactions, acts, practices, and courses of conduct alleged in this Complaint, each of the Defendants, directly or indirectly, has made use of the (a) means or instrumentalities of interstate commerce, (b) mails, or (c) facilities of a national securities exchange in connection with the offer, purchase, and/or sale of securities.

7.      Venue in this district is proper pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Section 27 of the Exchange Act [15 U.S.C. § 78aa] because certain of the transactions, acts, practices, and courses of business alleged in this Complaint, which constitute violations of the federal securities laws, took place in this district and because the defendants regularly transact business in this district or transacted business with 21st Century Technologies, Inc. ("21st Century") in this district.  21st Century had its principal place of business in Las Vegas, Nevada, and each of the Defendants transacted business for or with 21st Century in this district.  For example, Defendants were present for a key meeting between officers and directors of 21st Century

and Lefkowitz that occurred in August 2004 at the company's offices in Las Vegas, and the origin of stock issued by 21st Century pursuant to its Regulation E offering was Las Vegas.

## DEFENDANTS

8.      Defendant **Compass Capital Group, Inc.** is a corporation organized under the laws of New York with its principal place of business in New York City. Compass Capital is controlled by Mark A. Lefkowitz.

9.      Defendant **Mark A. Lefkowitz**, age 40, is a resident of Colts Neck, New Jersey.  At all relevant times, Lefkowitz controlled Compass Capital.  Lefkowitz held Series 7 and Series 63 licenses with the NASD until they were revoked following a disciplinary proceeding in 2003.

10.     Defendant **Alvin L. Dahl**, CPA, age 66, is a resident of Plano, Texas. From June 2000 through November 2004, Dahl was employed by 21st Century as its Chief Financial Officer ("CFO").  At all relevant times, Dahl has also been self-employed as a Certified Public Accountant ("CPA").  Dahl's CPA license was granted by the State of Texas.

11.     Defendant **John R. Dumble**, age 56, is a resident of Las Vegas, Nevada. Dumble was employed by 21st Century beginning in 2000 and was appointed Chief Executive Officer ("CEO") in November 2004.

12.     Defendant **John C. Hopf**, age 42, is a resident of Katonah, New York. Beginning in December 2003, Hopf served on 21st Century's Board of Directors.  Hopf owns and operates Bull Market Trading LLC ("Bull Market Trading") and Wall Street FN, LLC ("Wall Street FN").  The business of Bull Market Trading is trading in

securities for Hopf's own benefit.  Wall Street FN provides investor relations services, typically to penny stock companies.

13.     Defendant **Kevin D. Romney**, CPA, age 47, is a resident of Henderson, Nevada.  From May 2002 until November 2004, Romney was employed by 21st Century in various capacities, beginning as a consultant.  From August 2002 until August 2003, he was a member of 21st Century's Board of Directors.  In the fall of 2003, Romney signed documents and correspondence as "general manager" and "senior vice president" of 21st Century.  From April 21 to November 10, 2004, Romney was 21st Century's CEO.  Romney obtained a license as a CPA from the State of Texas, which was revoked in 1995 due to his failure to pay the annual license fee for three years.

14.     Defendant **Shane H. Traveller**, CPA, age 41, is a resident of Corona, California.  From August 28, 2003 until February 28, 2005, Traveller was a member of 21st Century's Board of Directors.  From December 2002 to the present, Traveller provided consulting services that facilitated 21st Century's election to be regulated as a BDC.  He obtained a license as a CPA from the State of California in 1994.  The license lapsed in 2003 after he failed to renew it.

## OTHER RELEVANT ENTITIES

15.     **21st Century Technologies, Inc.**, was a corporation organized under the laws of Nevada with its principal place of business in Las Vegas, Nevada.  It elected to be regulated as a BDC in August 2003.  21st Century's common stock was registered under Section 12(g) of the Exchange Act and traded on the Over-the-Counter Bulletin Board until the Commission suspended trading in the stock on February 18, 2005.  On November 1, 2005, 21st Century filed for protection under Chapter 11 of the U.S.

Bankruptcy Code.  On March 30, 2006, 21st Century entered into a settlement agreement with its creditors that called for a structured liquidation of the company.  On May 23, 2007, the United States Bankruptcy Court for the District of Nevada entered an order confirming the company's Plan of Reorganization under Chapter 11, whereby the company's assets would be liquidated and any cash proceeds would be distributed to creditors by the administering trustee.  21st Century was formally dissolved by the State of Nevada on July 13, 2007.

16.     **Affiliated Investors,** as used in this Complaint, refers to certain investors, including several off-shore entities, which were recruited and represented by Compass Capital and Lefkowitz as part of the unlawful scheme to offer and sell 21st Century's Regulation E stock at a discount to market price, which these investors would then sell to the public for an immediate profit.

### FACTS

I.      **Background**

A.      **Regulation of BDCs**

17.     Pursuant to the Investment Company Act of 1940 [15 U.S.C. § 80a-1 et seq.] ("Company Act"), a company meeting certain eligibility criteria may elect to be regulated as a Business Development Company by filing a notification with the Commission on Form N-54A.  A company filing such a notification is regulated under Sections 55 through 65 of the Investment Company Act, which set forth requirements governing BDCs, including capital structure, stock issuance, the investments they may make, transactions they may enter into, and their governance.

18.     Pursuant to Regulation E of the Securities Act of 1933, qualifying BDCs may take advantage of an exemption from the stock registration requirements of Section 5 of the Securities Act subject to the terms and conditions of Securities Act Rules 601 to 610a.  Regulation E allows a qualifying BDC to raise up to $5 million in a one-year period through sales of securities to the public without filing a registration statement for the securities sold.  A Form 1-E filing initiates a Regulation E offering.  A Form 2-E is to be filed every six months during an offering or upon termination of an offering.

19.     Under Section 2(a)(41) of the Investment Company Act [15 U.S.C. § 80a-2(a)(41)] (made applicable to BDCs pursuant to Section 59 of the Act), BDCs must value securities for which market quotations are readily available at market value, and value their other investment assets at fair value as determined in good faith by the board of directors.

## B.     21st Century's Election of BDC Status

20.     In mid-2003, 21st Century hired defendant Traveller as a consultant to assist the company in preparing Commission filings so that it could elect to be regulated as a BDC and raise money through a Regulation E offering.

21.     On August 27, 2003, 21st Century filed a Form N-54A with the Commission, indicating its election to be regulated as a BDC.

22.     At that time, Traveller became a director of 21st Century.  From September 2003 through at least December 2004, Traveller also served as chairman of 21st Century's Audit Committee.

## II.      21st Century's Fraudulent 2003 Regulation E Offering

### A.      The Offering

23.      On August 28, 2003, 21st Century commenced an offering of common stock under Regulation E by filing a Form 1-E and offering circular with the Commission.  These filings were drafted by Traveller or under his supervision.

24.      The filing stated that the company intended to raise a maximum of $1 million in the offering.  The Form 1-E falsely stated that "[t]here are no underwriters in connection with this offering," and the offering circular falsely stated that the company would not pay any underwriting fee in connection with the offering.  No registration statement was in effect for this offering.

25.      Lefkowitz, on behalf of Compass Capital, signed a letter agreement with 21st Century dated September 2, 2003, committing to five million dollars in equity financing for 21st Century upon 21st Century becoming a BDC.

26.      On September 2, 2003, 21st Century announced in a press release that it had entered into an investment banking relationship with "Wall Street based investment firm" Compass Capital for a "financing commitment" of up to $5 million over the following twelve months.  This description of Compass Capital's role was false and misleading.

27.      Compass Capital did not intend to invest up to $5 million in 21st Century; rather, it was engaged to conduct a public offering.  Further, the press release failed to disclose that 21st Century and Compass Capital had agreed to undertake a public offering in excess of the $5 million of financing described in the press release.  Lefkowitz reviewed and approved the September 2, 2003 press release.

28.     Pursuant to an undisclosed arrangement between Compass Capital and 21st Century, Compass Capital and the Affiliated Investors would purchase 21st Century's Regulation E stock for $5 million, at a twenty-five percent discount to its market price. This arrangement gave Compass Capital and its Affiliated Investors significantly more than $5 million worth of 21st Century shares to resell.  As part of this offering, Compass Capital and its Affiliated Investors would then sell the stock to the public, reaping a virtually guaranteed profit.

29.     21st Century did not disclose, in press releases or Commission filings, that it was issuing stock at a substantial discount to the market price, or that the financing arrangement with Compass Capital would result in an unregistered public offering.

30.     The offering circular also was misleading because it concealed this arrangement and the effect of the discount on the amount of proceeds that the company would receive per share sold.

31.     Additionally, the descriptions of Compass Capital were false and misleading because they failed to disclose that Compass Capital was acting as an underwriter for the offering and would be compensated through the sale of 21st Century shares into the market rather than by receiving an underwriting fee directly from 21st Century.

32.     On September 11, 2003, 21st Century filed an amended Form 1-E and offering circular with the Commission, drafted by Traveller or under his supervision, that increased the amount to be raised to $5 million.

33.     The amended Form 1-E falsely stated that "[t]here are no underwriters in connection with this offering," and the offering circular falsely stated that 21st Century

would not pay any underwriting fee in connection with the offering.  The offering circular was also misleading because it concealed the discount stock arrangement between 21st Century and Compass Capital and the effect of the discount on how much of the proceeds went to the company per share sold.

34.     In November 2003, 21st Century issued a press release stating that the company had entered into a restricted stock purchase agreement with Compass Capital for the purchase of 10 million shares at a fixed price of $.25 per share for a total of $2.5 million. The press release stated that this was "a 200 percent premium over the current market price."

35.     Compass Capital only purchased $750,000 worth of restricted stock from 21st Century in the private placement transaction.  By virtue of its investment in 21st Century, Compass Capital became entitled to name a director to 21st Century's Board.  In December 2003, John Hopf, a business associate of Lefkowitz who was also affiliated with Compass Capital, became a member of the Board.

**B.     Compass Capital and Lefkowitz Aided and Abetted 21st Century's Antifraud Violations**

36.     The facts alleged in paragraphs 1-35 above constitute violations by 21st Century of the antifraud provisions of the Exchange Act.

37.     Lefkowitz, as the principal and control person of Compass Capital, negotiated and structured the financing arrangement with 21st Century for the 2003 Regulation E offering.  Lefkowitz also received one or more of the draft 21st Century press releases regarding the arrangement for comment and approval before dissemination by 21st Century.

38.      In or around August 2003, Lefkowitz also received a spreadsheet setting forth a schedule of future press releases that 21st Century would issue.  In addition, Defendant Romney sent Lefkowitz regular correspondence about the amounts 21st Century had raised, the number of shares issued, and the amounts of any "bonus" due to Lefkowitz and Compass Capital.

39.      Lefkowitz and Compass Capital had arrangements with several other BDCs whereby Compass Capital and its affiliates purchased stock issued pursuant to the Regulation E exemption directly from the companies at an undisclosed discount, and then sold the shares into the market.

40.      Lefkowitz and Compass Capital knew that 21st Century intended to engage in an illicit, unregistered public offering whereby Compass Capital and the Affiliated Investors would purchase shares at a discount from the company and resell those shares for a guaranteed profit into the market while describing Compass Capital only as a source of financing and not as an underwriter of the public offering.

41.       Lefkowitz and Compass Capital knew (i) that their role as underwriters was not disclosed in 21st Century's public statements including, in particular, the September 2, 2003 press release that Lefkowitz approved; and (ii) that 21st Century would in fact compensate Compass Capital and the Affiliated Investors for acting as underwriters by purposefully exceeding the $5 million limit imposed by Regulation E in order to pay an undisclosed underwriting fee in the form of the profits they made from reselling 21st Century shares into the market.

42.      Lefkowitz and Compass Capital profited by approximately $1.8 million from their involvement in the fraud plus fees they received from the Affiliated Investors.

43.     As crucial participants in the scheme, Lefkowitz and Compass Capital provided substantial assistance by purchasing the 21st Century shares at an undisclosed discount and selling them to the public and by arranging for the Affiliated Investors to purchase shares at an undisclosed discount and sell them to the public.  21st Century could not have carried out this unlawful offering without this substantial assistance by Lefkowitz and Compass Capital.

44.     Lefkowitz purchased and sold unregistered 21st Century shares for his own account and through Compass Capital's account, which he controlled.

45.     Lefkowitz and Compass Capital provided further substantial assistance to the scheme by not disclosing the arrangement between Compass Capital and 21st Century whereby 21st Century would issue Regulation E stock to Compass Capital and the Affiliated Investors for the purpose of conducting an unregistered public offering.

46.     When the Commission staff questioned Lefkowitz in sworn testimony as to his role in 21st Century's unregistered public offering, Lefkowitz refused to answer any questions on the subject and asserted his Fifth Amendment privilege against self-incrimination.

**III.     The 2003 Regulation E Offering Violated the Securities Act's Registration Provisions**

**A.     Failure to Comply With Regulation E**

47.     As explained above, Regulation E provides an exemption from the Securities Act's registration requirements for BDCs to raise up to five million dollars within one year.

48.     Between August 2003 and May 2004, 21st Century sold stock issued pursuant to Regulation E to Compass Capital, its Affiliated Investors and Hopf. Lefkowitz purchased a substantial amount of this stock for Compass Capital's account.

49.     After receiving stock from 21st Century, Compass Capital, the Affiliated Investors, and Hopf quickly sold most or all of their 21st Century shares to the public on the open market.  Between August 2003 and May 2004, Compass Capital, the Affiliated Investors, and Hopf sold to public investors approximately $8.3 million of 21st Century stock issued pursuant to Regulation E.

50.     21st Century received approximately $5 million of the proceeds of this offering with most of the remaining proceeds going to Compass Capital, the Affiliated Investors, and Hopf as an undisclosed underwriting fee.

51.     The sales of 21st Century securities constituted one continuous public offering by 21st Century through Compass Capital, the Affiliated Investors and Hopf. Because the sale of 21st Century shares yielded proceeds of approximately $8.3 million plus additional fees paid by the Affiliated Investors, the aggregate offering price of 21st Century's 2003 Regulation E offering exceeded the $5 million limit imposed by Regulation E.

52.     This unregistered public offering and sale of securities by 21st Century, Compass Capital, the Affiliated Investors, and Hopf violated the registration provisions of Section 5 of the Securities Act.

**B.     Defendants Compass Capital and Lefkowitz Acted As Unregistered Broker-Dealers**

53.     Neither Lefkowitz nor Compass Capital was registered with the Commission as a broker-dealer, but Lefkowitz and Compass Capital each acted as a broker and dealer in connection with 21st Century's Regulation E offerings.

54.     Lefkowitz and Compass Capital (i) actively solicited investors to purchase 21st Century's shares issued under Regulation E; (ii) offered for sale and sold 21st Century's shares; (iii) arranged for a large portion of the stock issued in the Regulation E offerings to be bought by the Affiliated Investors; and (iv) acted as the middleman between 21st Century and its Affiliated Investors for which the Affiliated Investors compensated Compass Capital.

55.     When the Commission staff questioned Lefkowitz in sworn testimony about whether Compass Capital operated as unregistered broker-dealer, Lefkowitz refused to answer any questions on the subject and asserted his Fifth Amendment privilege against self-incrimination.

**C.     Defendants Compass Capital, Lefkowitz, and Hopf Violated Section 5**

56.     Defendants Compass Capital, Lefkowitz, and Hopf each bought Regulation E stock from 21st Century at an undisclosed discount and then quickly offered and sold that stock into the public market.  No registration statement was in effect for these sales of stock, nor was any exemption from registration applicable to the sales. Through this conduct, Compass Capital, Lefkowitz and Hopf engaged in unregistered offers and sales of securities.

57.     Lefkowitz bought approximately 74,000,000 shares from 21st Century and sold them for proceeds of approximately $2,800,000.  Hopf bought approximately 8,000,000 shares from 21st Century and sold them for proceeds of approximately $300,000 through his Bull Market Trading account.

58.     Lefkowitz and Compass Capital were also indirect sellers of 21st Century shares sold in this unregistered offering by negotiating and arranging for the Affiliated Investors to purchase 21st Century stock issued pursuant to Regulation E at the same discount that Compass Capital received, for which Compass Capital was paid a fee.

59.     In addition, Compass Capital, Lefkowitz, and Hopf were necessary participants in 21st Century's 2003 unregistered offering.  By selling and arranging for the sale of 21st Century stock issued pursuant to Regulation E, Compass Capital, Lefkowitz and Hopf facilitated the offer and sale of 21st Century shares, which yielded virtually all of the money raised in the offering.

60.     When the Commission staff questioned Lefkowitz and Hopf in sworn testimony about selling 21st Century shares in violation of Section 5, Lefkowitz and Hopf each refused to answer and asserted their Fifth Amendment privileges against self-incrimination.

### D.     Defendant Romney Violated Section 5 of the Securities Act

61.     Defendant Romney, as 21st Century's General Manager, had a significant role in the 2003 Regulation E offering.  In August 2003, Romney and others met with Lefkowitz in Las Vegas to discuss the terms of the arrangement between 21st Century and Compass Capital for the upcoming offering of securities.

62.    When 21st Century elected to be regulated as a BDC, Romney sent Lefkowitz a spreadsheet setting forth a schedule of the issuance of future press releases by 21st Century.  During the course of the offering, Romney also corresponded with Lefkowitz concerning the amounts that had been raised, the number of shares that had been issued, and the amounts of any "bonus" due to Lefkowitz and Compass Capital.

63.    Romney also maintained records for 21st Century that tracked each issuance of Regulation E stock and the proceeds received by the company.

64.    As a result of this conduct, Romney participated in the unregistered offering or sale of 21st Century's securities.

65.    In addition, by virtue of his conduct in planning the offering and working with Lefkowitz and Compass on the offering, Romney indirectly offered or sold 21st Century's securities in unregistered transactions.

### E.    Defendant Romney Signed a False and Misleading Form 2-E

66.    In May 2004, Romney signed a Form 2-E that terminated 21st Century's 2003 Regulation E offering.

67.    The Form 2-E was false and materially misleading in several respects.  It falsely stated that no underwriters were used in the offering.  It stated that a total of $5 million had been raised in the offering, when the actual amount raised was approximately $8.3 million.  The Form 2-E also omitted the amount of the underwriting fee that Compass Capital and the Affiliated Investors received through their sales of discounted 21st Century shares.

68.    Because of Romney's actions in support of the 2003 Regulation E offering, including his responsibility for managing the offering on behalf of 21st Century

and his interactions with Lefkowitz and Compass Capital, he knew or was reckless in not knowing that more than $5 million had been raised from the public sales of 21st Century's shares as a result of Compass Capital's reselling of the shares to the public that it received from 21st Century at an undisclosed discount.  Romney thus knew or was reckless in not knowing that the Form 2-E contained a false and materially misleading description of the amount raised, and it omitted disclosing that Compass Capital was an underwriter for the offering.

### IV.    False and Misleading Statements Regarding 21st Century's Assets

69.    21st Century reported investments in a portfolio of companies in its periodic filings with the Commission.  As a BDC, 21st Century was required by the Company Act to value its portfolio securities for which market quotations were not readily available at fair value as determined in good faith by the board of directors.

70.    Several valuations reported by 21st Century in its annual report for 2003 and the first three quarterly reports for 2004 were false or materially misleading.

### A.    False and Misleading Valuation and Description of HCIA/Pacific Development Investment

71.    In its 2003 annual report and three quarterly reports in 2004, 21st Century reported an investment in Healthcare Investors of America, Inc. ("HCIA").  The investment – which 21st Century valued at $5.3 million (approximately forty percent of 21st Century's reported assets) – ostensibly represented shares in HCIA stock.

72.    The description and valuation of the HCIA investment was false and materially misleading.  In fact, 21st Century never acquired an interest in HCIA.

73.    When HCIA executives discovered that 21st Century had reported an interest in HCIA as an asset in Commission filings, they complained in a letter to 21st

Century, addressed to defendant Dahl, in which they noted that HCIA had issued no stock to 21st Century. The letter stated, "we strongly suggest you cease and desist disseminating information about your ownership of HCIA stock as it is our unequivocal position that you have no such ownership."

74.    After receiving HCIA's letter, 21st Century simply changed the investment's name to "Pacific Development" on its financial statements in 21st Century's Form 10-Q for the quarter ended June 30, 2004. No disclosure was made to the public about the prior false and misleading statements made by the company.

75.    In August 2004, Traveller questioned other Board members about the HCIA investment, which he knew was described in 21st Century's 2003 Form 10-K, even though it had not been approved by the Board. As a member of 21st Century's Board, Traveller was responsible for valuing the asset in good faith. Traveller also signed a resolution approving the purported HCIA investment after the fact, in violation of 21st Century's internal policies.

76.    Traveller knew or was reckless in not knowing that 21st Century's public filings contained false and misleading statements about the HCIA investment. Nonetheless, he voted for and assisted with the commencement of 21st Century's second Regulation E offering in August 2004. Traveller also supervised the preparation of the 2004 Form 1-E and offering circular that incorporated 21st Century's Form 10-Q for the quarter ended June 30, 2004, which contained false and misleading statements.

### B.    False and Misleading Description of 1920 Bel Air Loan

77.    In its 2003 annual report on Form 10-K, 21st Century listed a "commercial loan" valued at $1,250,000 (approximately nine percent of 21st Century's reported assets)

to an entity named "1920 Bel Air, LLC."  The company's quarterly reports for 2004 continued to report the purported asset in the same way, albeit with minor reductions in value, to $900,000 by the third quarter of 2004.

78.     The description of the 1920 Bel Air loan as a commercial loan was false and materially misleading because the loan was actually a residential mortgage loan used by an acquaintance of Arland Dunn's to purchase a personal residence in Los Angeles. Dahl knew that this transaction was a residential mortgage loan and not a legitimate commercial transaction.

> C.     **False and Misleading Valuation and Description of City Wide Funding Investment**

79.     21st Century reported a loan to City Wide Funding as an asset in its 2003 Form 10-K and three 2004 Forms 10-Q.  The reported value of this loan ranged from about $325,000 to about $1.5 million over the period from 2003 to 2004.

80.     The valuation and description of the loan to City Wide Funding was false and materially misleading because City Wide was simply created by 21st Century's former Chairman of the Board and had no business operations.

81.     Defendant Dahl knew that the loan to City Wide was falsely described in 21st Century's filings and that, in fact, the money had been loaned to Penthouse International Inc.  Dahl believed that 21st Century purposely described the loan inaccurately in order to avoid the stigma it feared from disclosing that it had invested in a company associated with pornography.

D.     21st Century's Financial Condition is Described as a House of
       Cards

82.     In August 2004, defendant Traveller drafted a memorandum that raised

serious concerns about 21st Century's financial condition and the accuracy of its public

disclosures.  Traveller circulated the memorandum to Romney, Dahl, Dumble, Hopf, and

the rest of the Board.

83.     In this memorandum, dated August 23, 2004, Traveller wrote he was

"deeply concerned" with the investment portfolio and referred to the company as a

"house of cards."  Traveller further said the company was in a "cash crisis" and that its

financial statements did not clearly present its financial condition.

84.     Traveller also noted problems of corporate governance and internal

controls relating to Board approval of investments and financing decisions.

85.     For example, after 21st Century depleted the funds it had raised during its

2003 Regulation E offering, Romney arranged for his brothers to loan approximately

$460,000 to 21st Century for operating capital.  The existence and terms of these loans

and that 21st Century was forced to borrow operating capital from related parties were not

disclosed to investors, and the loans were never discussed or approved by 21st Century's

Board.

E.     21st Century Filed False and Misleading Financial Statements

86.     21st Century's annual report on Form 10-K for the year ended December

30, 2003, and quarterly reports on Forms 10-Q for the quarters ended March 31, 2004,

June 30, 2004, and September 30, 2004, contained 21st Century's financial statements,

which were false and materially misleading because they contained material

misstatements and omissions about 21st Century's investments in HCIA/Pacific Development, 1920 Bel Air and City Wide Funding.

87.     Dahl prepared 21st Century's false and misleading annual report on Form 10-K for 2003 and quarterly reports on Forms 10-Q for the first and second quarters of 2004.  He knew about the false and misleading description of the 1920 Bel Air, City Wide Funding, and HCIA investments.  Dahl substantially assisted 21st Century's violations by preparing the false and misleading statements contained in the company's 2003 10-K and Forms 10-Q for the first and second quarters of 2004 and certified their accuracy.

88.     Traveller knew in August 2004 that Romney's brothers had loaned money for operating capital to 21st Century, but he did nothing to ensure disclosure of this information in 21st Century's quarterly reports for the second and third quarters of 2004 or 21st Century's amended annual report for the year ended December 21, 2003.

89.     In approximately March 2004, Traveller created false minutes of Board meetings in order to support the asset valuations that appeared in the company's public filings during the period.  Traveller also agreed to approve certain investments, including the purported HCIA investment, after they had been made, in violation of the company's internal policies.

90.     By failing to ensure disclosure of material information he knew to be concealed, repeatedly approving investments after the fact contrary to the company's publicly disclosed policies, and by falsifying board minutes, Traveller substantially assisted 21st Century's filing of false and misleading financial statements.

91.     In November 2004, Dumble, in his capacity as CEO and acting CFO, signed and certified 21st Century's Form 10-Q for the third quarter of 2004, which he knew contained multiple misstatements and omissions regarding 21st Century's valuations of portfolio investments.

92.     Dumble was aware of concerns about the misstatements and omissions regarding asset valuations, because he had received Traveller's August 23, 2004 "house of cards" memo that described problems with the company's valuations and was present in meetings where those issues were discussed.  Dumble was aware that, days earlier, 21st Century's CEO and CFO had been forced to resign over issues related to the company's public disclosures.

93.     By signing the company's Form 10-Q for the third quarter of 2004, which he knew to be false and misleading, Dumble substantially assisted 21st Century's filing of false and misleading financial statements.

### F.     Violation of CEO and CFO Certification Requirements

94.     Defendant Romney was promoted to 21st Century's CEO in April 2004. As 21st Century's CEO, Romney was responsible for signing and certifying the financial information contained in 21st Century's Forms 10-Q for the first and second quarters of 2004.  His electronic signature appears on both filings.

95.     As alleged above, 21st Century's Forms 10-Q for the first and second quarters of 2004 contained false and materially misleading statements.  Accordingly, Romney violated Rule 13a-14 of the Exchange Act.

96.     Defendant Dahl also violated Exchange Act Rule 13a-14 when, as the company's CFO, he certified that 21st Century's Form 10-K for 2003 and Forms 10-Q for

the first and second quarters of 2004 were complete and accurate. As alleged above, these filings contained false and misleading descriptions of 21st Century's investments in 1920 Bel Air, City Wide Funding, and HCIA..

97.     Defendant Dumble also violated Exchange Act Rule 13a-14 in his capacity as CEO and acting CFO. He signed and certified 21st Century's Form 10-Q for the third quarter of 2004, which contained multiple misstatements and omissions regarding 21st Century's valuations of portfolio investments.

## V. False and Misleading Statements in Conjunction With 2004 Public Offering Under Regulation E

98.     On or about August 27, 2004, 21st Century began a second public offering of unregistered securities pursuant to the Regulation E exemption.

99.     No registration statement was in effect for this offering.

100.    Despite the concerns expressed in his August 23, 2004 memorandum to the Board and officers of 21st Century, Traveller concluded that 21st Century had "no choice" but to commence another Regulation E offering. Traveller and the rest of the Board approved 21st Century's second Regulation E offering days later without resolving the issues identified by Traveller in his August 23 memo, or disclosing them to the public.

101.    21st Century filed a false and materially misleading Form 1-E and offering circular on August 27, 2004. This filing stated that "[t]here are no underwriters in connection with this offering" and that the company would pay no underwriting fee. The offering circular was also misleading by concealing the discount stock arrangement between 21st Century and Compass Capital and the effect of the discount on how much of the proceeds went to the company per share sold.

24

102.    Despite that representation, Lefkowitz and Compass Capital and its Affiliated Investors, who had been involved in the 2003 Regulation E offering, again agreed to purchase shares from 21st Century at a substantial discount to market price and then immediately sold most or all of those shares to the public.

103.    In this offering, 21st Century issued convertible debentures to Compass Capital and its Affiliated Investors in exchange for cash.  The debentures were convertible into common shares at a substantial discount to 21st Century's market price.

104.    The concerns expressed in Traveller's August 23 memorandum were never disclosed to investors in the offering circular, or by any other means.  The offering circular attached and incorporated by reference the financial statements from 21st Century's most recent quarterly filing, which contained inaccurate information by Traveller in the August 23 memorandum and at a Board meeting at which all Board members and Lefkowitz were present.

105.    21st Century filed multiple amendments to this Form 1-E and offering circular with the Commission that contained the same or similar false and misleading statements.

106.    Traveller supervised the drafting of the Form 1-E and offering circular that were filed with the Commission.  Traveller knew or was reckless in not knowing the Form 1-E and offering circular contained false statements and omitted material information regarding 21st Century's asset valuations and financial condition.

107.    Traveller knew that the financing arrangement with Compass Capital, in which Compass Capital was acting as a statutory underwriter involved in the purchase of

stock at a discount to market price, but he did not disclose this fact in the Form 1-E or offering circular.

108.    Traveller also failed to ensure that the 2004 Form 1-E and offering circular disclosed the precarious financial state of the company that he noted in his "house of cards" memorandum.

109.    Traveller also knew in August 2004 that Romney's brothers had loaned money to the company.  He believed at the time that the loans were material and should have been disclosed.  Despite this, Traveller did not cause the loans to be disclosed in the company's 2004 Form 1-E and offering circular when he supervised the preparation of the filing.

110.    A portion of the stock issued during the 2004 Regulation E offering was issued at a discount to Romney's brothers in order to repay them for the loans they had made a few months earlier to the company.  This use of the stock was also not disclosed in the August 2004 offering circular.

**VI.    21st Century Publicly Reported False and Misleading Information in a November 2004 Form 8-K**

111.    On November 11, 2004, 21st Century filed with the Commission a Form 8-K that announced Dumble's appointment as CEO and stated that Dumble had owned and operated a successful granite, marble and ceramic tile business for over twenty years. Dumble knew or was reckless in not knowing that the description of his background was false when he signed this filing.

112.    Dumble had never owned any business and was merely an employee at a tile company prior to his involvement with 21st Century.  Dumble's chief qualification for the job of being 21st Century's CEO was being Arland Dunn's brother-in-law.

### VII.   21st Century's Failed Properly to Maintain a System of Internal Controls

113.   21st Century failed to devise and maintain a system of internal accounting controls sufficient to assure that only authorized transactions were executed and that transactions were recorded accurately.

114.   21st Century's annual report on Form 10-K for 2003 set forth procedures the company would follow in valuing its portfolio investments, including meeting to discuss preliminary valuations and supporting documentation, questioning valuation data and conclusions, and determining the fair value of the company's portfolio in good faith.

115.   Those procedures largely were ignored by 21st Century's Board, which never conducted a formal meeting at which valuations were assigned, did not review the valuations assigned in periodic filings, did not participate in the selection or approval of appraisal or valuation firms, and otherwise did not oversee the process of assigning fair values to the company's investments.

116.   21st Century's Board never approved publicly reported increases in valuations of investments and made no effort to analyze the value and collectibility of various loans made by the company.  Instead, 21st Century reported the principal amounts of the loans as their values.

117.   21st Century's Board approved the HCIA/Pacific Development transaction after the fact, in a breach of the company's internal control requirements.

118.   The related party loans from Romney's brothers to the company in late summer 2004 occurred without Board knowledge or approval.

119.   Traveller knowingly created false Board minutes that were supplied to 21st Century's auditors in connection with their 2003 audit of the company.  In so doing,

Traveller also falsified a record required to be made and kept by Section 13(b)(2)(A) of the Exchange Act.

### VIII.   Violation of Section 13(d) of the Exchange Act and Rule 13d-1 Thereunder

120.    Section 13(d) of the Exchange Act and Rule 13d-1 thereunder require a person who acquires more than five percent of an equity security registered pursuant to Section 12 of the Exchange Act file a statement on Schedule 13D or 13G.

121.    According to 21st Century's public filings, as of December 2004 and January 2005, Compass Capital owned 8.9 percent of 21st Century's common stock.

122.    Neither Compass Capital nor Lefkowitz filed a Schedule 13D or 13G with the Commission.

### FIRST CLAIM FOR RELIEF
### Violation of Section 17(a)(1) of the Securities Act
### (Against Defendants Romney and Traveller)

123.    The Commission realleges and incorporates by reference the allegations contained in Paragraphs 1 through 122 above.

124.    Defendants Romney and Traveller, by engaging in conduct described above, directly or indirectly, in the offer or sale of securities, by the use of the means or instruments of transportation or communication in interstate commerce or by use of the mails, with scienter, each employed devices, schemes, or artifices to defraud.

125.    As described above, Romney knew or was reckless in not knowing that the 2004 Form 2-E contained false and materially misleading statements when he signed the filing.  Traveller knew or was reckless in not knowing that 21st Century's 2004 Form 1-E and offering circular contained false and materially misleading statements when he supervised the drafting of these documents before they were filed with the Commission.

126.     By reason of the foregoing, defendants Romney and Traveller, and each of them, directly or indirectly, violated, and unless restrained and enjoined by this Court, will continue to violate Section 17(a)(1) of the Securities Act [15 U.S.C. § 77q(a)(1)].

### SECOND CLAIM FOR RELIEF
**Violations of Securities Act Section 17(a)(2) and (3)**
**(Against Defendants Romney and Traveller)**

127.     The Commission realleges and incorporates by reference the allegations contained in Paragraphs 1 though 126 above.

128.     Defendants Romney and Traveler, by engaging in the conduct described above, directly and indirectly, in the offer and sale of securities, by the use of the means or instruments of transportation or communication in interstate commerce or by use of the mails, have knowingly, recklessly or negligently (a) obtained money or property by means of untrue statements of material fact or by omitting to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, or (b) engaged in transactions, practices, or courses of business which operate or would operate as a fraud or deceit upon the purchaser.

129.     By reason of the foregoing, defendants Romney and Traveller, and each of them, directly or indirectly, violated, and unless restrained and enjoined will continue to violate, Section 17(a)(2) and 17(a)(3) of the Securities Act [15 U.S.C. §§ 77q(a)(2) and 77q(a)(3)].

## THIRD CLAIM FOR RELIEF
### Violations of Exchange Act Section 10(b) and Rule 10b-5 Thereunder
### (Against Defendants Dumble, Romney, and Traveller)

130.     The Commission realleges and incorporates by reference the allegations contained in Paragraphs 1 though 129 above.

131.     Defendants Dumble, Romney, and Traveller, by engaging in the conduct described above, directly or indirectly, by the use of means or instrumentalities of interstate commerce or use of the mails, in connection with the purchase or sale of securities, with scienter, (1) employed devices, schemes, or artifices to defraud; (2) made untrue statements of material fact or omitted to state a material fact necessary in order to make statements made, in light of the circumstances under which they were made not misleading; or (3) engaged in acts, practices, or courses of business that operated or would operate as a fraud and deceit upon other persons.

132.     Dumble knew or was reckless in not knowing that 21st Century's November 2004 Form 8-K contained false and materially misleading statements about his experience.  Romney knew or was reckless in not knowing about the false and materially misleading statements in 21st Century's Form 2-E, and Traveller knew or was reckless in not knowing of the false and materially misleading statements in 21st Century's 2004 Form 1-E and offering circular.

133.     By reason of the foregoing, defendants Dumble, Romney, and Traveller, and each of them, violated, and unless restrained and enjoined will continue to violate Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b) and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

### FOURTH CLAIM FOR RELIEF
#### Aiding and Abetting Violations of Exchange Act Section 10(b)
#### and Rule 10b-5 Thereunder
#### (Against Defendants Compass Capital and Lefkowitz)

134.    The Commission realleges and incorporates by reference the allegations

contained in Paragraphs 1 though 133 above.

135.    As described above, 21st Century violated Exchange Act Section 10(b) and

Rule 10b-5 by making materially false and misleading statements in a press release and

Commission filings about the amount the company planned to raise and the description of

Compass Capital's role in the offering.  Lefkowitz, in his capacity as the control person

of Compass Capital, in furtherance of a scheme to defraud investors, orchestrated the

purchase and public sale of 21st Century stock and reviewed and approved 21st Century's

issuance of a press release that contained false and misleading statements and omitted

material facts.

136.    By engaging in the conduct described above, Defendants Compass Capital

and Lefkowitz knowingly provided substantial assistance to 21st Century's violations of

Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.

137.    By engaging in the conduct described above and pursuant to Section 20(e)

of the Exchange Act [15 U.S.C. § 78t(e)], defendants Compass Capital and Lefkowitz

aided and abetted 21st Century's violations, and unless restrained and enjoined,

defendants Compass Capital and Lefkowitz will continue to aid and abet violations of

Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.

## FIFTH CLAIM FOR RELIEF
### Violation of Securities Act Sections 5(a) and (c)
### (Against Defendants Compass Capital, Lefkowitz, Romney, and Hopf)

138.   The Commission realleges and incorporates by reference the allegations contained in Paragraphs 1 though 137 above.

139.   Defendants Compass Capital, Lefkowitz, Romney, and Hopf, by engaging in the conduct described above, directly or indirectly, through use of the means or instruments of transportation or communication in interstate commerce or the mails, each offered to sell or sold 21st Century securities or, directly or indirectly, carried such securities through the mails or in interstate commerce, for the purpose of sale or delivery after sale.

140.   No registration statement has been filed with the Commission or has been in effect with respect to these securities.

141.   By reason of the foregoing, defendants Compass Capital, Lefkowitz, Romney, and Hopf, directly or indirectly, violated, and unless enjoined will continue to violate Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. § 77e(a) and 77e(c)].

## SIXTH CLAIM FOR RELIEF
### Violation of Section 15(a) of the Exchange Act
### (Against Defendants Compass Capital and Lefkowitz)

142.   The Commission realleges and incorporates by reference the allegations contained in Paragraphs 1 though 141 above.

143.   Defendants Compass Capital and Lefkowitz, directly or indirectly, made use of the mails or the means or instrumentalities of interstate commerce to effect transactions in, or to induce or attempt to induce the purchase and sale of, securities in

21st Century without being registered as a broker or dealer with the Commission or associated with a broker or dealer registered with the Commission.

144.    By reason of the foregoing, defendants Compass Capital and Lefkowitz violated, and unless restrained and enjoined will continue to violate, Section 15(a) of the Exchange Act [15 U.S.C. § 78o(a)].

### SEVENTH CLAIM FOR RELIEF
**Aiding and Abetting Violations of Exchange Act Section 13(a)
and Rules 12b-20, 13a-1, 13a-11, and 13a-13 Thereunder
(Against Defendants Dumble, Traveller, and Dahl)**

145.    The Commission realleges and incorporates by reference Paragraphs 1 through 144.

146.    Based on the conduct alleged above, defendants Dumble, Traveller, and Dahl violated Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Rules 12b-20 (Dumble, Traveller, and Dahl), 13a-1 (Traveller and Dahl), 13a-11 (Dumble), and 13a-13 (Dumble, Traveller, and Dahl) thereunder [17 C.F.R. §§ 240.12b-20, 240.13a-1, 240.13a-11, and 240.13a-13], which obligate issuers of securities registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78(l)] to file with the Commission accurate periodic reports, including annual, current, and quarterly reports. Unless restrained and enjoined, defendants Dumble, Traveller and Dahl will continue to violate Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Rules 12b-20, 13a-1, 13a-11, and 13a-13 thereunder [17 C.F.R. §§ 240.12b-20, 240.13a-1, 240.13a-11, and 240.13a-13].

147.    By engaging in the acts and conduct alleged above, Dumble, Traveller, and Dahl knowingly provided substantial assistance to 21st Century's filing of materially false and misleading reports with the Commission.

148.     By reason of the foregoing, Dumble, Traveller, and Dahl aided and abetted 21st Century's violations of Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Rules 12b-20, 13a-1, 13a-11, and 13a-13 [17 C.F.R. §§  240.12b-20, 240.13a-1, 240.13a-11, and 240.13a-13] thereunder.  Unless restrained and enjoined, Dumble, Traveller, and Dahl will continue to aid and abet such violations.

## EIGHTH CLAIM FOR RELIEF
### Violation of Exchange Act Section 13(b)(5)
### (Against Defendant Traveller)

149.     The Commission realleges and incorporates by reference Paragraphs 1 through 148 above.

150.     By creating false Board minutes that were supplied to 21st Century's auditors in connection with their 2003 audit of the company, Traveller knowingly circumvented 21st Century's internal accounting controls and knowingly falsified a record required to be made and kept pursuant to Section 13(b)(2) of the Exchange Act [15 U.S.C. § 78m(b)(2)].

151.     By reason of the foregoing, Traveller violated, and unless restrained and enjoined will continue to violate, Section 13(b)(5) [15 U.S.C. § 78m(b)(5) of the Exchange Act and Rule 13b2-1 thereunder [17 C.F.R. § 240.13b2-1].

## NINTH CLAIM FOR RELIEF
### Violation of Exchange Act Rule 13a-14
### (Against defendants Dumble, Romney, and Dahl)

152.     The Commission realleges and incorporates by reference Paragraphs 1 through 151 above.

153.     Rule 13a-14 requires an issuer's CEO and CFO to certify the financial information contained in the issuer's quarterly and annual reports.  Among other things,

Rule 13a-14 requires issuer reports to include a statement signed by the CEO and CFO, or persons performing similar functions, certifying the following: (1) that they have reviewed the report; (2) that, based on their knowledge, the report does not contain any untrue statement or omission of a material fact; and (3) that, based on their knowledge, the financial statements in the report fairly represent in all material respects the financial condition and results of operations of the issuer.

154.    Based on the conduct alleged above, defendants Dumble, Romney, and Dahl violated, and unless restrained and enjoined will continue to violate, Rule 13a-14 of the Exchange Act, [17 C.F.R. § 240.13a-14] enacted as part of the Sarbanes-Oxley Act of 2002.

### TENTH CLAIM FOR RELIEF
**Violation of Exchange Act Section 13(d) and Rule 13d-1 Thereunder**
**(Against Defendants Compass Capital and Lefkowitz)**

155.    The Commission realleges and incorporates by reference the allegations contained in Paragraphs 1 though 154 above.

156.    Defendants Compass Capital and Lefkowitz, by engaging in the conduct described above, violated, and unless restrained and enjoined will continue to violate, Section 13(d) of the Exchange Act [15 U.S.C. § 78m(d)] and Rule 13d-1 thereunder [17 C.F.R. § 240.13d-1] for their failure to file a Schedule 13D or 13G with the Commission upon acquiring more than 5% of the outstanding equity of 21st Century.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff Securities and Exchange Commission respectfully requests that the Court:

## **I.**

Enter judgment in favor of the Commission finding that the defendants each violated the securities laws and rules promulgated thereunder as alleged herein;

## **II.**

Permanently enjoin defendants Lefkowitz, Dumble, Romney, and Traveller from violating Section 10(b) of the Exchange Act and Rule l0b-5 promulgated thereunder. [15 U.S.C § 78j(b); 17 C.F.R. § 240.l0b-5]; permanently enjoin defendants Romney and Traveller from violating Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)]; permanently enjoin defendants Compass Capital, Lefkowitz, Romney, and Hopf from violating Section 5(a) and 5(c) of the Securities Act [15 U.S.C. § 77e(a) and 77e(c)]; permanently enjoin defendants Compass Capital and Lefkowitz from violating Section 15(a) of the Exchange Act [15 U.S.C. § 78o(a)]; permanently enjoin defendants  Dumble, Traveller, and Dahl from violating Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Rules 12b-20 (Dumble, Traveller, and Dahl), 13a-1 (Traveller and Dahl), 13a-11 (Dumble), and 13a-13 (Dumble, Traveller, and Dahl) thereunder [17 C.F.R. §§ 240.12b-20, 240.13a-1, 240.13a-11, and 240.13a-13]; permanently enjoin defendant Traveller from violating Section 13(b)(5) [15 U.S.C. § 78m(b)(5) of the Exchange Act and Rule 13b2-1 thereunder [17 C.F.R. § 240.13b2-1]; permanently enjoin defendants Dumble, Romney, and Dahl from violating Rule 13a-14 of the Exchange Act, [17 C.F.R.

36

240.13a-14] enacted as part of the Sarbanes-Oxley Act of 2002; and permanently enjoin defendants Compass Capital and Lefkowitz from violating, Section 13(d) of the Exchange Act [15 U.S.C. § 78m(d)] and Rule 13d-1 thereunder [17 C.F.R. § 240.13d-1].

**III**.

Order the defendants to pay civil money penalties pursuant to Section 21(d)(3) of the Exchange Act of 1934 [15 U.S.C. § 78u(d)(3)];

**IV**.

Order that defendants Dumble, Romney, and Traveller be permanently barred pursuant to Section 21 (d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)], from acting as an officer or director of any issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l], or that is required to file reports pursuant to Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)];

**V.**

Order that all Defendants be permanently barred from participating in an offering of penny stock, pursuant to Section 21(d)(6) of the Exchange Act [15 U.S.C. § 78u(d)(6)]; and

**VI**.

Grant such other relief as this Court may deem just and proper.

Dated: April 10, 2008

Respectfully submitted,

_____/s/_____

Stephen L. Cohen

Of counsel:                       Stacey M. Nahrwold
Antonia Chion                     Securities and Exchange Commission
Yuri B. Zelinsky                  100 F Street, N.E.
Lawrence C. Renbaum               Washington, D.C. 20549
                                  (202) 551-4472 (Cohen)
                                  (202) 772-9245 (fax)
                                  cohens@sec.gov

                                  Attorneys for Plaintiff